VOLUNTEER STATE LIFE INSURANCE COMPANY
*v.* POWELL-WHITE COMPANY *et al.*

No. 14593.   JULY 8, 1943.

*R. A. Bell* and *E. F. Strozier,* for plaintiff.

*S. P. Cain,* for defendants.

REID, Chief Justice.   This case on its previous appearance in this court is reported in 187 *Ga.* 705 (1 S. E. 2d, 662), to which reference may be made for a statement of the case as of that time. On March 3, 1941, Andrew Forrester, and Mrs. R. L. Forrester as administratrix of R. L. Forrester, deceased, filed what they termed a "cross-bill and amended answer," but what might be more appropriately designated as an intervention, which was allowed by the court and ordered filed, subject to demurrer.   In this intervention it was alleged, that A. C. and R. L. Forrester in the latter part of 1922 owned all of lot of land number 183 in the 17th district of Grady County, except fifty-four acres, more or less, in the northeast corner of said lot; that this last-mentioned tract was a part of the land known as the Mrs. Mollie J. Forrester place.   They held also a deed to this tract, and other lands, from their step-mother; Mrs. Mollie J. Forrester, subject to a life-estate in her, and this tract extended south to a public road that crosses said

lot. A dwelling-house, barn, and outside houses were located on the southern part of this tract and just north of the public road, of the value of approximately $1500, and Mrs. Mollie J. Forrester was in possession of this land in 1922 and 1923. In the latter part of 1922 A. C. Forrester and R. L. Forrester applied to plaintiff for a loan to be secured by a deed conveying certain lands. Part of the land to be conveyed as such security was all of lot 183 except the tract above referred to as the Mollie J. Forrester home place, containing fifty-four acres, more or less, in the northeast corner of said lot. A survey of the lands was made by E. L. Reagan, county surveyor, and furnished to the plaintiff, which through its agents made an appraisal of the lands to be conveyed as security for the loan, which included that part of lot 183 that was to be pledged as a part of the security. In making the appraisal the agents did not take into consideration any part of the Mollie J. Forrester home place or the improvements thereon; and they at the time understood that no part of this tract was to be conveyed to the plaintiff as security. Before the security deed was executed, as defendants alleged they were advised, the plaintiff returned the survey to the surveyor, with the request that he so correct it as to exclude the Mollie J. Forrester tract, and return it. It was further alleged, that no survey was made of the tract to be excluded, but that the surveyor marked off fifty chains in the form of a square on the plat in the northeast corner of the said lot as representing the tract not to be included in the security deed, and that A. C. and R. L. Forrester were not advised by the surveyor of these acts; that thereafter A. C. and R. L. Forrester executed a security deed prepared by the plaintiff as described in the petition, intending to convey to the plaintiff all of lot 183 except the Mollie J. Forrester home place; that they and the plaintiff understood at the time that said tract was not to be included in the conveyance, and that the deed had been so drawn as to exclude it, but as a matter of fact the deed did include a strip of land which is the subject-matter of this controversy and described in paragraph 3 of the petition, which was a part of the Mollie J. Forrester tract and upon which was located the home in which she lived, and other improvements to the value of approximately $1500; that by reason of the foregoing the security deed from A. C. and R. L. Forrester to the plaintiff, by mutual mistake of the parties, included land in controversy

when said property should not have been so included; that on March 14, 1923, A. C. and R. L. Forrester for value and in good faith executed to Cairo Banking Company their security deed conveying to said bank a second lien on land conveyed to plaintiff, and a first lien on all of the Mollie J. Forrester tract in lot 183, and that all parties to this deed in good faith understood that it conveyed all the Mollie J. Forrester tract in lot 183; a part of which is the land in controversy. On February 29, 1932, A. C. and R. L. Forrester executed to O. T. Davis their warranty deed conveying the Mollie J. Forrester tract in lot 183, he being the holder of the notes and security deed made to the Cairo Banking Company. Davis took possession, and he and those claiming under him have been in open, notorious, continuous, exclusive, and peaceable possession at all times since February 29, 1932, and the plaintiff at no time has been in possession, and until about September 1, 1935, made no claim to said tract. Davis died on March 1, 1933, leaving his mother as his sole heir at law, who as such conveyed the Mollie J. Forrester tract, including land in controversy, to Powell-White Company in 1933. It was further alleged, that the defendants, A. C. and R. L. Forrester, are entitled to have the security deed executed by them to the plaintiff, and the sale made thereunder to itself, so corrected and reformed as to cover all of lot 183 except the Mollie J. Forrester land in the northeast corner of said lot, the public road to be the southern boundary; that such reformation will in no way deprive the plaintiff of any right as it received under said deed and sale everything it was entitled to; and that "defendants file this cross-action for the benefit of defendant Powell-White Company, as well as for the benefit of defendants A. C. Forrester and the estate of R. L. Forrester, deceased, each of whom being liable under the warranty of title included in the deed to O. T. Davis, dated February 29, 1932."

The plaintiff moved to strike the names of intervenors as parties, because (1) they have no interest in the subject-matter of the action; (2) no legal or equitable relief is sought against them; (3) their introduction into the case constitutes a misjoinder of parties; and (4) the plaintiff's action is statutory, for land, in which said parties are not named as defendants and against whom no relief is prayed. It moved also to strike said "cross-bill and amended answer," because (1) there was nothing to amend, neither

of said named defendants having at any time previously to the filing of said cross-bill and amended answer filed an answer or plea in said cause; (2) because the trial term of said case was the October term, 1938, and said cross-bill and amended answer was not filed until the March term, 1941. The plaintiff also demurred to the cross-bill, on the grounds (1) that no cause of action was set forth against the plaintiff; (2) that no defense, legal or equitable, was alleged; (3) that defendants were not entitled to any of the relief sought; (4) that defendants were barred by the statute of limitations from asserting a right to reform said deed; (5) that the cross-bill is an attempt to set up a new and distinct cause of action; and (6) that it seeks to reform the plaintiff's deed for Powell-White Company. Special demurrers were directed to certain paragraphs because the names of the plaintiff's agents, who it was alleged acted for the plaintiff in making the appraisal, were not set out. The motions and demurrers were overruled, and exceptions pendente lite were taken. In its answer to the cross-action the plaintiff made a general denial, and averred there was no mutual mistake, and that the defendants were barred by the statute of limitations from asserting a right to reform the deed. On the trial the jury found that the deeds should be reformed as prayed. The insurance company excepted to the overruling of its motion for new trial.

■ Perhaps the first question that should be disposed of is that of parties. It was held, when the case was here before, that subsequent grantees (Powell-White Company) could not obtain reformation of the deed by the Forresters, who were not at that time parties to the cause, since the parties stood in no relation of privity "in law, fact, or estate with the defendant." There is no difficulty in the joinder of the equitable cause presented by the intervention or cross-action which sought so to reform the deeds involved as to correct the alleged mutual mistake made by both parties, and to have incorporated a correct description of the property intended to be conveyed. It was held in *Mims* v. *Lifsey*, 192 *Ga.* 366 (15 S. E. 2d, 440): "Under the procedure in this State, a plaintiff may in the same action seek both legal and equitable relief. Hence a plaintiff who can neither successfully sue at law to recover the possession of land nor in equity to cancel deeds which would constitute clouds upon his title if he had obtained possession

through legal remedies, without reforming one of his title deeds, may sue in equity to reform the deed, to recover possession of the land, with damages in the nature of mesne profits, and to cancel as clouds upon his title security deeds executed by the claimant under whom the adverse possession of the land is held." And it was said: "Reformation of the deed is essentially equitable relief; and in an action for that purpose it is proper, if not indispensable, that the plaintiff should join as defendants all who would be adversely affected by the reformation. Hence in this case it was proper to join as defendants E. J. Mims, who but for the deed would take as heir at law, and Dekle Funeral Home and E. J. Lifsey, to whom Mims had executed deeds to secure debt. Lifsey was properly joined, because he claimed a right to occupy the land for a substantial period of time under contract with Mims. Equity, having the parties before it for the purpose of reforming the deed, could grant full relief, including recovery of the land and damages for its detention, in the nature of a legal recovery of mesne profits, and anything else necessary to make the relief by reformation fully effective. Code, § 37-105. Since the plaintiffs could not assert their rights as owners, either in law or in equity, without a reformation of the description of the land in the deed, it was their right to have the deed reformed as against the holders of the security deeds, in order to have those deeds canceled as clouds on the title." See *Cheatham* v. *Palmer,* 191 *Ga.* 617 (13 S. E. 2d, 674) ; *American Fidelity & Casualty Co.* v. *Elder,* 189 *Ga.* 229 (5 S. E. 2d, 668) ; *Sawyer Coal & Ice Co.* v. *Kinnett-Odum Co.,* 192 *Ga.* 166, 169 (14 S. E. 2d, 879). The Forresters as prior warrantors of the title to the property involved had an interest to be adjudicated, and were not only proper but indispensable parties. *Volunteer State Life Ins. Co.* v. *Powell-White Co.,* supra. "It has long been the practice in this State to allow joinder of immediate and remote warrantors in the same action where the warranties are concurrent. *Croom* v. *Allen,* 145 *Ga.* 347 (89 S. E. 199). Indeed since the remote warrantor is liable over to the immediate warrantor, it is the latter's right to vouch the former into court and to bind him by the judgment; and even to cause him to be made a party in ordinary situations." *Sawyer Coal & Ice Co.* v. *Kinnett-Odum Co.,* supra; *Sweatman* v. *Dailey,* 162 *Ga.* 295 (133 S. E. 257) ; *Mims* v. *Lifsey,* supra. There is accordingly

no merit either in the contention that the Forresters were improperly joined as parties, or that the amendment seeking equitable relief as to the subject-matter embraced in the original petition was improperly allowed.

■ Nor were the interested parties barred from the relief of reformation, by the statute of limitations or by laches. "An owner of land in possession of it, who resorts to a court of equity to cancel a forged deed as a cloud on his title, is not chargeable with laches, though as much as ten or eleven years may have intervened since his discovery of the forged deed." *Smith* v. *Burrus*, 139 *Ga.* 10 (2) (76 S. E. 362). See *Sweatman* v. *Dailey*, supra; *Hunnicutt* v. *Archer*, 163 *Ga.* 868 (137 S. E. 253), where it was said: "A party in possession is not too late to move for reformation of a deed under which she claims title and right to possession until her possession is sought to be disturbed." Citing *Wall* v. *Arrington*, 13 *Ga.* 88; *Smith* v. *Burrus*, and *Sweatman* v. *Dailey*, supra. There is no dispute that the Forresters or their grantees had been in continuous possession of the property claimed by the plaintiff, which it is contended should have been excluded from their deed, without knowledge of any adverse claim on the part of the plaintiff until October, 1935. An important observation is that the plaintiff foreclosed under its security deed, the property being sold at public outcry on the first Tuesday in January, 1934, and that it purchased the land at said sale, receiving its warranty deed conveying in part the property in dispute, on January 2, 1934; that the plaintiff never went into possession of the property in controversy, and did not until October 8, 1935, almost two years later, file its petition for recovery of the land. This is significant in that the plaintiff was evidently content until it discovered that the deed contained the land herein sued for.

■ The first four special grounds of the motion for new trial complain because the court admitted testimony tending to show that the Forresters, grantors in the original security deed to the plaintiff, did not intend to embrace in their loan or to convey to plaintiff any of the land known as the Mollie J. Forrester place. Some of this testimony related to the survey which had been made of the property, and to the division of the G. W. Forrester property among his children, which had been made some years before and under which the fifty-four acres located in the northeastern

corner of lot 183 was awarded to Mrs. Mollie J. Forrester for life. The testimony related also to an inspection made of the property by an agent of the Farmers Land, Loan & Title Company, the broker through which the application for the loan was handled in behalf of the Forresters. The objections to all of this testimony were predicated on the contention that neither the loan broker, the surveyor, nor the local agent of the loan broker was an agent of the plaintiff, and therefore any understanding which the Forresters had as to what was being conveyed by the loan deed was not binding on the plaintiff. The force of this attack in all of these grounds, which for that reason are being considered together, depends upon a consideration of the evidence as a whole. We do not find it necessary to determine whether the loan broker and others involved in negotiating the loan sustained any relationship of agency with the plaintiff, because from the evidence we find substantially this state of facts. The Farmers Land, Loan & Title Company was a broker engaged in placing and procuring loans on real estate. J. F. Montgomery of Grady County, as a part of his business, was engaged in receiving and handling applications for loans, acting in the capacity of "correspondent" of the Farmers Land, Loan & Title Company. He received an application from the Forresters for a loan, and forwarded it as signed by the Forresters to the Farmers Land, Loan & Title Company. This application did not undertake to give boundaries or specific description of the property. Later a representative of the Farmers Land, Loan & Title Company filed with the plaintiff a report on the property, in the nature of an appraisal, but giving specific information with respect to it. This was called an inspector's report. The information in it was likewise general as related to the description of the property, but it did list the buildings located on the property which was the subject-matter of the loan. In this list were described only those buildings located on the property conveyed which was not in dispute. It did not include a description of any of the buildings located on the Mollie J. Forrester land. This report was likewise transmitted to the Farmers Land, Loan & Title Company, and in turn to the plaintiff. A survey was made by the county surveyor, and an abstract of title was submitted; all of which were furnished to the plaintiff. The abstract of title showed on its face that there was excluded from the caption, or the property em-

braced in the title examination, a portion of lot 183 in the northeast corner, which the abstract showed was not included in the loan; and when this information was first communicated to the plaintiff the survey was returned with the request that the surveyor mark off the boundaries of the Mollie J. Forrester property, in pursuance of which the surveyor, instead of doing so and without going on the premises again, merely marked off on his plat a fifty-acre square in the northeast corner of this lot, which left excluded from the fifty acres, and later included in the conveyance to the plaintiff the Mollie J. Forrester residence and several additional acres which had been alloted to her; but there remained in the abstract the statement that all of the lands in lot 183 were conveyed "except the part drawn by Mollie J. Forrester." The abstract showed also a deed of conveyance from the Forrester heirs to Mollie J. Forrester of a tract of land "in the northeast corner of lot 183 and the southeast corner of lot 178 south of Connell branch, the said branch being the north line." Under this was a notation: "This not in caption lands shown for reference." This and other evidence we consider sufficient to authorize the jury to find that the insurance company was on notice that it was to receive title only to that portion of lot 183 excluding the Mollie J. Forrester place, and that it was never the intention that its loan should embrace that portion of the property which contained her home place. If this be true, there was sufficient evidence to invoke the doctrine of mutual mistake, and it would follow that the Forresters would have the right, by such testimony objected to and urged in the motion, to prove that they as parties to the deed did not intend to convey and did not understand that they were conveying the property in dispute. If there is basis for proof of mutual mistake, the intention of both parties could be established, and evidence could be admitted as to the intention of each of them respectively. This could be established by means of separate inquiry, that is, what was the intention of this party and what was the intention of the other party. The respective intentions need not have been communicated with one another, provided they were *mutual,* provided they both intended the same. It seems to us clear from the record that the doctrine was properly invoked and that the plaintiff, aside from the Mollie J. Forrester lands, received title to all that it relied on as security and all that it was intended to convey. On the ques-

tion of sufficiency of evidence of mutual mistake, see *Bender* v. *Randall Brothers Inc.*, 189 *Ga.* 197, 200 (5 S. E. 2d, 889).

■ Ground 5 complains that the judge should have charged the jury that reformation should be denied on account of the long lapse of time between the date of conveyance and the date of filing the proceeding for correction of the alleged mistake. This has been disposed of by the ruling in division 2, above.

■ What has been said disposes of the contentions made in ground 6 dealing with the question of notice to the plaintiff, as to the intention of the grantors in the deed.

■ Ground 7 complains of the following in the court's charge: "If a party by reasonable diligence could have had knowledge of the truth, equity will not relieve. I charge you in that connection however that if the opposite party does not suffer from said negligence that rule would not apply." The error assigned is that "The jury might have reasonably inferred that equity would afford relief, regardless of the running of the statute of limitations, regardless of the negligence of the complaining party, where no loss was suffered from negligence," it being contended that although loss would be suffered by the opposite party in case of granting equitable relief, this would make no difference. This contention must likewise be resolved against the plaintiff in error, when considered in connection with the charge as a whole. "Reformation may be granted even in cases of negligence by the party complaining, if it appear that the other party has not been prejudiced thereby." *Green* v. *Johnson*, 153 *Ga.* 738 (5) (113 S. E. 402); *Steadham* v. *Cobb*, 186 *Ga.* 30, 39 (196 S. E. 730); *Bender* v. *Randall*, supra. Under the verdict the insurance company obtained title to all of the land bargained for under its loan. There was no error in any of the rulings excepted to, or in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Duckworth, J., disqualified.*