THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, plaintiff in error, *vs.* ELIZA G. BURROUGHS, defendant in error.

By the Act of 7th March, 1866, copies of lost bonds, or notes, may be established without requiring indemnity, unless the party liable for the payment of such lost paper shall make oath, as required by the second section of said Act, which being done, the party seeking to establish the copy bond, or note, shall be remitted to the remedies provided by law, before the passage of the Act of 1866.

Motion to establish lost bonds. Decided by Judge FLEM-ING, at Chambers, during Chatham Superior Court, May Term, 1866.

Said cause was a petition to said Court, by said Eliza G. Burroughs, for the establishment, against the said The Mayor and Aldermen of the City of Savannah (a municipal corporation), of two coupon bonds issued by said corporation, each for the sum of five hundred dollars, one numbered seven hundred and seventy-one (771), and the other seven hundred and seventy-two (772), signed R. Wayne, Mayor, and Joseph W. Robarts, City Treasurer, dated on the first day of December, eighteen hundred and fifty-three, with fifty coupons attached to each, for seventeen dollars and fifty cents for the semi-annual interest secured by each coupon; the bonds themselves being payable to the bearer thereof, on the first day of December, in the year eighteen hundred and eighty-eight, and the coupons also payable to the bearer, on the first day of June and the first day of December of each year; and which bonds, with said coupons attached, were, in said petition, averred to have been burned at Columbia, South Carolina, on the night of the seventeenth of February, eighteen hundred and sixty-five, at the burning of that place by the army of General Sherman. Said petition was verified by the affidavit of the applicant.

To this petition, said corporation, by its attorney, filed a plea or answer, to the effect that there was not sufficient evidence, under the proofs in said cause, that said bonds, with coupons attached, were either lost or destroyed; and, again,

that if there were such proofs in said cause as would author-ize the establishment of said alleged bonds as either lost or destroyed, yet that the establishment of such bonds, if granted by the Court, should be upon such just and equitable terms as would secure said corporation from the possibility of loss in case such bonds should thereafter prove to be in existence.

Petitioner's attorneys then introduced in evidence the testi-mony of WILLIAM F. DESAUSSURE and EDWIN J. SCOTT, of Columbia, South Carolina, taken by commission. Mr. DeSaussure testified that petitioner was his daughter, and resided with him at Columbia; that he had in his possession the bonds in question, which were the property of petitioner, on the sixteenth day of February, eighteen hundred and sixty-five, and that they had been so in his possession for many years previous, for safe keeping, and that he might get the coupons cashed for her as they became due; that they were kept with his own stocks in a locked drawer in his office about one hundred and fifty yards from his dwelling; that on the fifteenth of said February, General Sherman's army approached Columbia, and that on the sixteenth of said month, witness, with some ladies of his family, left Columbia for Camden, and that he therefore knew nothing personally of what occurred in Columbia after he left, but that, upon his return soon after the enemy left, he found his dwelling and office burnt, with all his books and papers; that not a house was left standing within several hundred yards of his office, and it was morally certain that the bonds in question perished in the conflagration, although he did not see them burnt; that there were nine law offices adjoining each other, of which his was one; that all were burned to the ground, but witness never heard it alleged that any of them were broken open and plundered; that, on the fifteenth of Febru-ary, to guard against contingencies, he made a descriptive list of stocks, deeds, bonds, etc., which he held in his own right, or as trustee, guardian, or agent, and among these were petitioner's bonds—the bonds and other valuable papers having been returned to the drawer, and the list kept in his pocket; that on the twentieth of April he advertised for a

renewal of certificates of stocks, etc., which had been destroyed, and that most, but not all, of the certificates had been renewed by the respective companies; that all the coupons, not due, were attached to the bonds; and he believed the coupons due in December, 1864, were unpaid and still attached to the bonds, but this he could not say with absolute certainty.

On the cross-examination, this witness stated that he could not say the bonds were destroyed by fire or otherwise; that he had stated the facts he knew, and others must draw the conclusion; that the bonds were in his possession on the 16th of February, locked up in his office; on the 17th the city was destroyed, and his office burnt with all his papers; that he has never heard of the bonds since, and that he had no reason to suppose they were abstracted from his office before the fire; and that he thought, but was not certain, that the coupons due in December, 1864, were still attached and unpaid.

The other witness testified that he had no knowledge of the bonds in question; that, as cashier of the Commercial Bank of Columbia, he had collected for Mr. DeSaussure, several times within the last ten years, two coupons of the city corporation of Savannah, for seventeen dollars and a half each, which Mr. DeSaussure said belonged to his daughter, Mrs. Burroughs.

Upon the foregoing state of the pleadings and evidence, the cause was submitted to the Court, after argument by the attorneys of the petitioner, and argument by the attorney of said corporation of Savannah—the attorney for said city insisting that there was no legal certainty, under the proofs in said cause, that said bonds of petitioner, with coupons attached, had been destroyed; and therefore, it was the duty of the Court, before establishing the same, to require of the petitioner indemnity to said corporation. The Court made the rule absolute for establishing said coupon bonds, without indemnity to said corporation, and put its decision on the alleged validity of the Act of the seventh day of March, eighteen hundred and sixty-six, entitled *"An Act amendatory*

*of the law relating to the establishment of lost papers,"* and ruled that it was not necessary to decide whether, under the law as it existed before that statute, the defendant would be entitled to a bond of indemnity ; and that the law, as it existed before that statute, had nothing to do with the case until the defendant should have taken the oath prescribed in that statute.

Whereupon, counsel for said corporation moved the Court for a re-hearing of said cause, on several grounds, and, amongst others, that said Act of 7th March, 1866, according to the construction put upon it by the Court, would be un-constitutional, as violative of private right in denying the right of cross-examining witnesses, and the right of trial by jury, and subjecting parties to the risk of paying debts twice; and that, if strictly construed without reference to previous legislation and law upon the same subject, said Act would take from courts the power to require indemnity from applicants for establishing lost papers ; and the Judge of said Court refused a re-hearing, thereby affirming the previous decision of the Court in the premises.

To which rulings and decisions of said Court and Judge, in the premises, the said corporation by its said attorney excepted, and now says :

1. That the Court erred in deciding that there was before it sufficient legal proof of the destruction of said coupon bonds of petitioner sought to be established.

2. That the Court erred in refusing to require said petitioner, Eliza G. Burroughs, to give indemnity to said corporation upon the establishment of said bonds as destroyed or lost.

3. That the Court erred in deciding that said Act of 7th March, 1866, did or could constitutionally authorize the Court to establish said coupon bonds, without indemnity, and that it did or could constitutionally deny the right to cross-examine witnesses, or take away the right of trial by jury unless the defendant should make oath that said bonds never existed, or that the same had been paid off or discharged.

4. That the Court erred in deciding that there was any

law repealing or interfering with that part of the sixth section of the Act of the sixteenth day of February, in the year seventeen hundred and ninety-nine, entitled "*An Act to amend an Act entitled 'An Act to revise and amend the judiciary system of this State,'*" which declares that "the said Courts respectively shall have power and authority to establish copies of lost papers, deeds or other writings, under such rules and precautions as are or may have been customary and according to law and equity."

5. That said Court erred in not granting the motion for a re-hearing of said cause.

EDWARD J. HARDEN, for plaintiff in error.

LAW & LOVELL, for defendant in error.

WARNER, C. J.

That the Superior Courts in this State have the *power* and authority to require indemnity where lost papers are sought to be established, under such rules and precautions as are or may have been customary, and *according to law and equity,* cannot be doubted; but the question to be decided in this case is, what does *the law* require? Does the existing law require, or is it "according to law" that indemnity shall be given by the party seeking to establish a copy of a lost bond or note, before he is entitled to the judgment of the Court in his favor? The Act of 7th March, 1866, furnishes the conclusive answer to this inquiry: that Act, not violating the Constitution, is, in our judgment, *the law* applicable to this question, and must control it.

This Act was passed in view of the then condition of the country, and was intended to give to parties whose papers had been lost or destroyed a *summary* remedy to establish copies thereof, to "be used in any Court of this State in lieu of the lost original." There is, however, by the second section of the Act, a precautionary rule adopted for the protection of the makers of the original papers alleged to have been lost or destroyed. The second section of the Act de-

The Mayor, &c., of Savannah *vs.* Burroughs.

clares, "That if any party who is liable for the payment of said lost paper in whole or in part, or whose interests are affected by the establishment of said paper, shall make oath that the said paper never existed, or that the same has been paid off or discharged, the party seeking to establish the same in the summary manner herein provided, shall be remitted to the remedies *heretofore provided by law.*"    The evidence exhibited by the record in this case is very strong, that the original bonds were *destroyed.*    There being no oath made in this case as allowed by the second section of the Act, and the petitioner having complied with the requirements of the first section, she was entitled to have the copy bonds established in accordance with the terms and provisions thereof. Let the judgment of the Court below be affirmed.

———

HARRIS, J., dissenting :

I regret that I cannot concur with my associates in the judgment rendered in this case. When it was argued last December, the then Court differed very essentially in reference to the several acts of the Legislature, passed since the Judiciary Act of 1799, touching the establishment of lost papers.

By the sixth section of the Act of 1799, it was enacted "that the said Courts respectively shall have power and authority to establish copies of lost papers, deeds or other writings, under such rules and precautions as are or may have been customary and according to law and equity."    I entertained then and now the opinion that the power thus conferred contained within it necessarily the power to require indemnity to be given by a party seeking to establish a copy of a lost security for the payment of money—that this power to require indemnity was unaffected by the Act of 1866, or by any and all of the acts passed since 1799—that these acts were made only to facilitate and provide for a summary or

speedy establishment of copies. My then associates did not assent to my view of these acts, but deemed the Act of 1866 as peremptory, and that it excluded the Judge from the exercise of the power to require indemnity as preliminary to or concurrently with the establishment of copies under that Act.

At the June term, 1867, the case not having been decided, (Judge Warner having succeeded Judge Lumpkin,) was brought up for final consideration. The Court were then unanimous in the distinct recognition of the general power of the Superior Courts to require indemnity, and that that power was unaffected by the Act of 1866.

I entertain the view, that in the establishment of money securities, indemnity should be required at the time when copies are sought to be established, otherwise it will fail to protect obligors, and will prove illusory—thus, suppose the established copy bonds and coupons get into the hands of *bona fide purchasers without notice,* how can such holders when calling for payment be required to enter into any indemnifying bond without the violation of all principle? Thus the obligors, if the original bonds and coupons are in existence, (as I think probable, for the evidence does not convince me that they were burned,) will be bound to pay them to *bona fide* holders. Of these last, no indemnity can be exacted. The result will be, from a failure to require indemnity when the copy bonds and coupons were established, the obligors are exposed to a double payment, and have no protection against such palpable injustice.

I therefore dissent from the judgment rendered.